UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 14-23682-CIV-MORENO**

MEREDITH RUTLEDGE,

    Plaintiff,

vs.

NCL (BAHAMAS) LTD., and MILIND NAIK,

    Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

Plaintiff Meredith Rutledge, a photographer employed by Defendant Norwegian Cruise Lines (Bahamas), Ltd. ("NCL"), brings this lawsuit against Defendant NCL and Defendant Milind Naik. Plaintiff's claims stem from two alleged incidents while employed by NCL: (1) An April 20, 2013 slip and fall on the cruise ship; and (2) The sexual harassment and sexual assault of Plaintiff by her supervisor, Defendant Naik, over a period of several months. Plaintiff alleges negligence (Count IV), unseaworthiness (Count V), failure to pay maintenance and cure (Count VI), and failure to treat (Count VII) against Defendant NCL stemming from both incidents, and alleges negligence (Count I) and strict liability (Count II) against Defendant NCL stemming from the sexual harassment and sexual assault of the Plaintiff. Plaintiff also brings an intentional tort claim (Count III) against Defendant Naik for the alleged sexual harassment and sexual assault.

Defendant NCL moves to compel Plaintiff's claims to arbitration.[1] For the reasons provided below, Defendant's Motion to Compel Arbitration (D.E. No. 13) is GRANTED IN PART and

---

[1] Count III (Intentional Tort of Sexual Assault and Sexual Harassment against Defendant Milind Naik) is alleged only against Defendant Naik. Accordingly, Count III is not at issue in Defendant's Motion to Compel Arbitration, and will not be addressed here. Simultaneously with this Order, the Court will enter an Order Dismissing the Case Without Prejudice as to Defendant Naik for failure to serve the summons and complaint upon Defendant Naik in compliance with Federal Rule of Civil Procedure 4(m).

DENIED IN PART. Counts IV, V, VI and VII are compelled to arbitration. The request for arbitration as to Counts I and II is denied, and Defendant NCL shall answer or otherwise respond to these claims by no later than **February 27, 2015**. It is further adjudged that this case shall be set for trial for the two-week period commencing **October 5, 2015**. Accordingly, calendar call will take place **Tuesday, September 29, 2015 at 2:00 P.M.**[2]

## Analysis

Congress, through passage of the Federal Arbitration Act, and the United States Supreme Court, in interpreting the Act, have created a strong federal policy in favor of arbitration. *Picard v. Credit Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009). Therefore, "[q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Under this policy, it is the role of courts to "rigorously enforce agreements to arbitrate," *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004), and to "constru[e] any doubt in favor of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

In deciding whether to compel arbitration under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), the Court must conduct a very limited inquiry. *E.g., Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257, 1275 (11th Cir. 2011) (citation omitted). A district court shall order arbitration unless (1) the four jurisdictional prerequisites are not met; or (2) one of the Convention's affirmative defenses applies. *Id.* at 1276. The four jurisdictional prerequisites are: (1) there is an agreement to arbitrate in writing; (2) the agreement provides for arbitration in the territory of a signatory to the Convention; (3) the agreement arises out

---

[2] A Scheduling Order will be issued in conjunction with this Order.

of a commercial, legal relationship; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states. 9 U.S.C. §§ 201-08; *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005).

### A. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards Applies in this Dispute.

The parties concede that the first three jurisdictional prerequisites are met. The parties disagree, however, as to whether there is a sufficient foreign nexus to met the fourth jurisdictional requirement. Plaintiff argues that, as a threshold matter, the Convention does not apply where the arbitration agreement is entirely between citizens of the United States, and where there is "no reasonable connection between the parties' commercial relationship and a foreign state." Resp. at 2. The parties concede that Plaintiff and NCL are both citizens of the United States. With respect to the second sub-issue, Plaintiff argues there is no reasonable connection between the parties' commercial relationship and a foreign state.

As the party seeking to compel arbitration, Defendant bears the burden of proving each jurisdictional prerequisite. *Armstrong v. NCL (Bahamas) Ltd.*, 998 F. Supp. 2d 1335, 1338 (S.D. Fla. 2013). With respect to the fourth jurisdictional prerequisite, under 9 U.S.C. § 202, an agreement between citizens of the United States generally does not fall under the Convention "unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states."

According to the Complaint, NCL employed the Plaintiff as the ship's photographer. Plaintiff worked and lived on board Defendant's vessel, *M/S Norwegian Pearl*. Defendant argues the arbitration agreement "envisages performance or enforcement abroad" where: (a) "[E]very cruise Plaintiff worked on during the relevant time period traveled outside the territorial waters of the

United States," Mot. at 6; (b) The vessel, "The Pearl," "sailed to six foreign ports during Plaintiff's service on the vessel," Mot. at 6; and © The Pearl was outside the United States for approximately 80% of her employment." Mot. at 6.

Defendant points to *Odom v. Celebrity Cruises, Inc.*, 2011 WL 10636151 (S.D. Fla. Feb. 23, 2011), where the court compelled the dispute to arbitration. In relevant part, the court found that where a cruise ship "entered six different countries' ports and sailed constantly on the seas", where the plaintiff's duties were performed "primarily outside of the United States," and where "abroad" generally means "outside of a country" - and combining these factors with the "strong federal policy in favor of arbitration" - such a relationship "contemplates performance abroad." *Id.* at *2 (citing *Freudensprung v. Offshore Techncial Servs., Inc.*, 379 F.3d 327, 339-41 (5th Cir. 2004) (holding the relationship concerned performance abroad where the employee worked on a barge off the west coast of Africa)). The court in *Odom* noted other cases within the Southern District of Florida that "took a different view," but ultimately held that "given the federal policy favoring arbitration, the language in the statute, and the *Freudensprung* case, I believe the better interpretation is that the relationship between Celebrity and Mr. Odom envisages performance abroad." 2011 WL 10636151, at *2.

Plaintiff, on the other hand, points to *Armstrong v. NCL (Bahamas) Ltd.*, 998 F. Supp. 2d 1335, 1338-39 (S.D. Fla. 2013), where the court denied NCL's request to compel arbitration. The court found "the parties' legal relationship does not bear a reasonable relation to a foreign state," primarily where the plaintiff "performed work only aboard the [vessel] and was never requested to perform work or services on foreign soil." The court also noted that the plaintiff was hired by NCL through an employment agency located in North Miami, Florida. *Id.* at *1339. Plaintiff here argues that she, too, was not required to perform work or services on foreign soil. *See* Rutledge Aff. ¶¶ 4-5

("My work only required me to take pictures of passengers on board the Pearl and of passengers leaving and entering the ship. I was not required or expected to clear customs in order to take photographs in the cities that the ship visited."). Plaintiff also argues that she applied, was interviewed, and was hired in the United States, and executed the employment agreement in the United States. Id. at ¶¶ 9-11. Therefore, similar to Armstrong, the "employment is more closely related to the United States than to a foreign country." Resp. at 4.

The Court recognizes the varying approaches in Odom and Armstrong, and finds that the employment relationship between NCL and Plaintiff Rutledge envisages performance abroad, thus satisfying the fourth jurisdictional requirement. The language in 9 U.S.C. § 202 and the "strong federal policy favoring arbitration" supports such a finding. As noted above, the Pearl in each cruise traveled outside the United States, and was outside the country for 80% of Plaintiff's employment, and sailed to six foreign ports during Plaintiff's service on the vessel. Mot. at 6. Indeed, "Plaintiff's work performances - the reason for which [s]he was hired - were to be performed primarily outside the United States." Odom, 2011 WL 10636151. Because the fourth jurisdictional prerequisite is met, the Convention applies to this dispute.

Plaintiff further argues, in the alternative, that to the extent the subject arbitration agreement calls for arbitration under Bahamian law, this in and of itself is not enough to apply the Convention to the dispute. Resp. at 6. However, because the Court here finds that the relationship between Defendant NCL and Plaintiff Rutledge does envisage performance abroad, it need not address this alternative argument.[3]

---

[3] The Court also will not address Defendant's argument regarding Bahamian law (see Repl. at 3), as Plaintiff has not argued that the choice-of-law provision in the arbitration agreement is unenforceable due to the inadequacy of the remedies available under Bahamian law.

**B. Plaintiff's Claims for Jones Act Negligence (Count IV), Unseaworthiness (Count V), Failure to Pay Maintenance and Cure (Count VI), and Failure to Treat (Count VII) are Compelled to Arbitration. Arbitration is Denied for Plaintiff's Claims for Negligence for the Sexual Harassment and Sexual Assault of the Plaintiff (Count I) and Strict Liability for the Intentional Acts of Milind Naik (Count II).**

Where the Court has found the Convention applies to Plaintiff's claims, it must now determine whether Plaintiff's claims are encompassed under the arbitration agreement between Defendant and Plaintiff. The subject arbitration agreement provides,

> [A]ny and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seaman's shipboard employment with Company including, but not limited to, claims such as personal injuries, Jones Act claims, actions for maintenance and cure, unseaworthiness, wages, or otherwise, no matter how described, pleaded, or styled...shall be referred to and resolved exclusively by binding arbitration[.]

Mot. at 2, Exh. A, ¶ 16 ("Arbitration Provision"). Plaintiff's claims for Jones Act negligence, unseaworthiness, and failure to pay maintenance and cure fall directly under this provision, and must therefore be compelled to arbitration. Similarly, Plaintiff's claim for failure to treat shall be compelled to arbitration as the claim "relat[es] to" or is "in any way connected with" Plaintiff's employment with NCL.[4]

Plaintiff's claims for negligence and strict liability, however, shall proceed before this Court. Count I alleges "Negligence against NCL for the Sexual Harassment and Sexual Assault of the Plaintiff," and seeks to hold NCL liable for its own negligence for allowing an employee, co-Defendant Naik, to sexually harass and sexually assault Plaintiff. Count II alleges "Strict Liability against NCL for the Intentional Acts of Milind Naik," and seeks to hold NCL strictly liable for Naik's sexual assault and sexual harassment of Plaintiff.

---

[4] Plaintiff does not argue that, assuming the Convention applies to this dispute, Counts VI, V, VII and VIII would somehow not be encompassed within the broad language of the Arbitration Provision.

Defendant argues Plaintiff's sexual assault claims "arise directly from her employment with Norwegian[.]" Mot. at 7. Specifically, Defendant argues that because Plaintiff alleges that Defendant failed to exercise reasonable care to "keep and maintain the premises in which the Plaintiff lived and worked," and that by "virtue of NCL's agency relationship" with Naik, it is strictly liable for Naik's alleged actions, the claims necessarily arise from Plaintiff's shipboard employment. Compl. at ¶¶ 25, 33. Defendant further argues that the sexual advances occurred during Plaintiff's work hours, that Naik had "the power to promote, demote and fire Plaintiff, approve raises, and set the Plaintiff's schedule and hours," and that Naik would threaten to demote Plaintiff and refuse "to perform his duties as the ship's Photography Department Manager." Compl. at ¶¶ 13, 14-18. As a result, Defendant argues, Counts I and II "are intertwined with her employment in such a manner that it would require an examination of Plaintiff's conduct as Norwegian's employee." Repl. at 5.

Plaintiff argues these claims are simply not "relat[ed] to" or "connected with" her employment as a ship's photographer, and therefore fall outside of the scope of the Arbitration Provision. Resp. at 7. Plaintiff points to *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011), where the court held that Plaintiff's claims against Princess Cruise Lines - stemming from the rape of the plaintiff, a bar server who worked and lived aboard a cruise ship, and how the cruise line and its officials treated the plaintiff after learning she had been raped - were not subject to arbitration. The court in *Doe* looked to the limiting language of the subject arbitration agreement, finding that "to be arbitrable, the dispute between Doe and the cruise line must relate to, arise from, or be connected with her crew agreement or the employment services she performed for the cruise line." *Id.* at 1217-18. The Court further held that the terms "arising out of," "related to" and "connected with" necessarily "requires the existence of some direct relationship between the dispute

and the performance of duties specified by the contract." *Id.* at 1218. The Court concluded, "[n]othing about those allegations relate to, arise out of, or are connected with Doe's crew agreement or her duties as a bar server." *Id.* at 1219.

The Court finds *Doe* instructive.[5] The limiting language in the Arbitration Provision between Defendant NCL and Plaintiff Rutledge is almost identical to the language seen in *Doe*. Here, the Arbitration Provision encompasses "any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seaman's shipboard employment with Company," while the provision in *Doe* provided the claims "must relate to, arise from, or be connected with her crew agreement or the employment services she performed for the cruise line." *Doe*, 657 F.3d at 1217-18. The Court, similar to the court in *Doe*, rejects Defendant's argument that merely because Plaintiff was employed by Defendant and under the supervision and oversight of co-Defendant Naik, Plaintiff's sexual harassment and sexual assault claims must be related and connected to her employment. *See id.* at 1219 ("The incidental fact that Doe might not have been on the cruise ship if she had not been working for the cruise line does not mean that her claims relate to, arise from, or are connected with the crew agreement and the services that she performed for the cruise line.").

Simply stated, claims of negligence and strict liability stemming from sexual harassment and sexual assault do not sufficiently relate to Plaintiff's employment as a ship's photographer. Importantly, these claims would still exist even if Plaintiff were not an NCL employee, but rather a guest on the cruise ship. *See Doe*, 657 F.3d at 1220 ("By way of illustration, a passenger could

---

[5] The Court will not address Defendant's citation to *King v. Cintas Corp.*, 2013 WL 427858 (N.D. Ala. Feb. 5, 2013), as it is factually inapposite and not binding on this Court.

have brought these same five claims against the cruise line based on virtually the same alleged facts[.]"). In other words, the subject claims are not an "immediate, foreseeable result of the performance" of the parties' contractual duties or [Plaintiff's] services as [an] employee." *Id.* at 1219 (quoting *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001)).

The allegations in Plaintiff's Complaint similarly demonstrate that she would have the same causes of action for negligence and strict liability against Defendant even if she were not an NCL employee. As Plaintiff argues, "the claims exist even in the absence of an employment relationship," Resp. at 16, and therefore are not encompassed in the Arbitration Provision as they do not sufficiently "relate to" or are "connected with" Plaintiff's employment with NCL.

Lastly, if Defendant had wanted a broader arbitration provision, "it should have left the scope of it at 'any and all disputes, claims, or controversies whatsoever,' instead of including the limitation that narrowed the scope to only those disputes, claims or controversies" relating to or connected with Plaintiff's employment with NCL. *Doe*, 657 F.3d at 1218 ("Contrary to [Defendant's] position, the terms used in the limiting language are not unlimited in scope."). . The Court rejects Defendants argument that the arbitration provision in *Doe* is distinguishable from the Arbitration Provision in this dispute - the limiting language is nearly identical. Accordingly, Count I and Count II are not encompassed within the Arbitration Provision, and shall proceed before this Court.

## C. The Allocation of Arbitration Costs is an Issue for the Arbitrator.

Plaintiff argues in the alternative that Defendant's Motion to Compel Arbitration should be denied where the arbitration agreement is silent as to who pays for the costs of the arbitration. Plaintiff argues that were she required to pay for arbitration, that in effect would force her to abandon her claims due to her "limited financial means." Resp. at 17. Plaintiff points to court decisions

where arbitration provisions forcing employees to pay for purportedly "steep" arbitration costs were held to be unenforceable as depriving the employee of any meaningful relief. Resp. at 17-18.

Defendant argues that simply because the subject arbitration agreement is silent as to who is required to pay for arbitration costs does not, in and of itself, render the clause unenforceable. Defendant points to *Ramirez v. NCL (Bahamas), Ltd.*, 991 F. Supp. 2d 1187, 1193 (S.D. Fla. 2013), where the court held that Defendant NCL's "refusal to pay all costs associated with the arbitration . . . is not a basis for precluding [] enforcement" of the arbitration agreement, and that "[t]he allocation of arbitration costs is a proper subject for the arbitrator."

The Court agrees with the district court in *Ramirez*. The mere fact that the arbitration agreement between Plaintiff Rutledge and Defendant NCL is silent as to which party bears the costs of arbitration does not, by itself, render the agreement unenforceable. The allocation of arbitration costs is a proper subject for the arbitrator.

### Conclusion

For the reasons provided above, Defendant's Motion to Compel Arbitration (D.E. No. 13) is GRANTED IN PART and DENIED IN PART. Accordingly, it is

**ADJUDGED** that:

(1) Counts IV (Jones Act Negligence), V (Unseaworthiness), VI (Failure to Pay Maintenance and Cure) and VII (Failure to Treat), are compelled to arbitration.

(2) The request for arbitration as to Counts I (Negligence) and II (Strict Liability) is denied, and those claims shall proceed before this court. Defendant NCL shall answer or otherwise respond to these claims by no later than **February 27, 2015**.

(3) This case shall be set for trial for the two-week period commencing **October 5, 2015**.

Accordingly, calendar call shall take place on **Tuesday, September 29, 2015 at 2:00 P.M.**

DONE AND ORDERED in Chambers at Miami, Florida, this 3rd day of February, 2015.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record